THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of
IRVING KORNBLEIT, Complainant, *v.* CLAUDE YARBROUGH,
Defendant.

City Magistrates' Court of New York, Borough of Manhattan, First District,
April 11, 1938.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General,* and *Joseph A. McLaughlin* and *John Loehr, Assistant Attorneys-General,* of counsel], for the People.

*Morris M. Marcus,* for the defendant.

ROTHENBERG, C. M.   Defendant is charged with a violation of section 167 of the Labor Law, as amended by chapter 534 of the Laws of 1937, reading as follows: " When any driver of a motor truck or motor bus shall have been on duty continuously for ten

hours or at separate intervals for ten (10) hours in the aggregate or less in any fourteen consecutive hours including time for meals, even though part of such time shall have been outside of the State of New York he shall not continue or again go on duty without having had at least eight consecutive hours off duty. The periods of release from duty herein required shall be free from and off the truck or bus and free from work of any kind and shall be given at such places and under such circumstances that rest and relaxation from the strain of the duties of employment may be obtained."

The testimony established that the defendant went on duty as the driver of a motor truck loaded with freight at Richmond, Va., destined for New York on November 11, 1937, at eight P. M. and that defendant remained on the truck, alternating as driver with one Russell E. Jones, until ten-forty-five A. M. of November 12, 1937, a period of fourteen and three-quarters hours; that defendant left the truck during the course of the journey for a total period of one and one-quarter hours; that he was, therefore, on duty on the truck for more than ten consecutive hours. There was also evidence that on the truck there was a sleeping compartment in which defendant slept during the time he was relieved from driving by Russell Jones. The rest so obtained, however, was not in compliance with the requirements of the statute. The trip was made from Richmond, Va., through the States of Virginia, Maryland, New Jersey and New York, at which latter point defendant was stopped by an investigator of the State Labor Department.

Defendant challenges the constitutionality of the statute in question on the ground that it is beyond the power of the Legislature to enact legislation regulating commerce between States, the jurisdiction of Congress of the United States with respect thereto being exclusive; and upon the further ground that the statute is violative of the due process clauses of the Federal and State Constitutions.

The statute under consideration was aimed to protect operators of motor trucks and buses as well as the public generally from the dangers incident to fatigue of drivers. The statute is the outgrowth of long and tragic experience with accidents on the highways of this and of other States. The fatalities resulting from overwork of motor truck drivers is common knowledge and needs no elaboration.

There is clear and ample recognition by the United States Supreme Court and by our own courts of the right of the States to enact legislation appropriate, reasonable and beneficial to the health of employees and to public safety. The general principle was broadly laid down in the case of *Missouri Pacific R. Co.* v. *Larabee Flour Mills Co.* (211 U. S. 612), where it was held: "Notwithstanding

the creation of the Interstate Commerce Commission, and the delegation to it by Congress of the control of certain matters, a State may, in the absence of express action by Congress or by such Commission, regulate for the benefit of its citizens local matters indirectly affecting interstate commerce." *(Fougera & Co. v. City of New York,* 224 N. Y. 269.)

It is now the well-settled law that while the State cannot, under cover of exercising its police power, directly regulate or burden interstate commerce, a police regulation which has real relation to the proper protection of the people and is reasonable in terms and does not conflict with any valid act of Congress, is not unconstitutional because it may incidentally affect interstate commerce. *(Savage v. Jones,* 225 U. S. 501; *Austin v. State of Tennessee,* 179 id. 343; *St. Louis, I. M. & S. R. Co. v. State of Arkansas,* 240 id. 518; *Minnesota Rate Cases,* 230 id. 352.)

Similarly, section 1 of the Fourteenth Amendment to the Constitution of the United States and section 6 of article 1 of the Constitution of the State of New York have been held to be subject to the police power of the State, and the Legislature may enact laws to further public health, safety, morals and the welfare of the People of the State, notwithstanding the due process clauses. *(People ex rel. Rayland Realty Co., Inc., v. Fagan,* 194 App. Div. 185; affd., 230 N. Y. 653.)

The Federal decisions dealing with interstate commerce serve to show that a distinction is to be drawn between those cases in which the control of Congress is exclusive and the States cannot interfere at all, and those cases in which the States may act in the absence of legislation by Congress or those agencies duly delegated by it. The latter class of cases relates to what is termed " concurrent jurisdiction." Within that category may be included laws under the police power of the State intended to advance the health, safety and welfare of its inhabitants. Whenever Congress may be entitled to act as to such matters by virtue of its powers to secure the complete regulation of interstate commerce, the State power, nevertheless, continues until Congress does act and by its valid interposition limits the exercise of local authority.

Defendant contends that since Congress has vested the Interstate Commerce Commission under the Federal Motor Carrier Act (U. S. Code, tit. 49, § 301 *et seq.*) with complete authority to regulate motor carriers and the Commission has actually adopted rules and regulations governing the subject, the State power must yield. It must be borne in mind, however, that the prosecution here is based upon a violation of the State law which took place on November 12, 1937, whereas the Interstate Commerce Commission's rules were

adopted on December 29, 1937, and only become effective on July 1, 1938.∎ The State of New York having exercised its lawful right in the public interest to regulate the operation of motor vehicles upon its own highways, such legislation is not superseded by Federal action until Federal rules and regulations relating to the precise subject-matter embraced within the State legislation become operative. The law does not require the State to expose its citizens to danger in the intermediate period. In *Werner Transp. Co.* v. *Hughes* (19 F. Supp. 425) the United States District Court, in passing upon a similar situation, said (p. 434): " These Federal rules do not become effective until July 1, 1937, and it was certainly not the intent of the Congress that motor trucks engaged in interstate commerce should be without regulation of any kind * * * until July 1, 1937."

The defendant's motion to dismiss the complaint is denied. Defendant is found guilty of the offense charged and is sentenced to pay a fine of twenty-five dollars or to serve five days in the city prison.